UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANTHONY BAILEY,<br><br>             Plaintiff,<br><br>    v.<br><br>NDOC et. al.,<br><br>             Defendant. | Case No. 2:20-cv-01709-KJD-VCF<br><br>ORDER |

Presently before the Court is Defendant Gregory Martin's Motion for Summary Judgment (#31). Plaintiff filed a response in opposition (#41) to which Defendant replied (#43). Also before the Court is Plaintiff's Motion Objecting to Use of Exhibits Filed Under Seal (#36) which Defendant opposed (#38). Finally before the Court is Plaintiff's Motion to Extend Time (#37). Having read and considered the motion, opposition and response, the motion to extend time is granted.

I.      <u>Factual and Procedural Background</u>

Plaintiff Anthony Bailey ("Bailey") is an inmate at High Desert State Prison in Nevada. He brought this suit against the defendants asserting civil rights claims arising from 42 U.S.C. § 1983. On June 3, 2021, the Court issued a screening order dismissing many claims and letting others proceed. (#10). The allegations allowed to proceed are Eighth Amendment claims for: (1) denial of treatment for Bailey's urinary symptoms and the stripping of lower-level restrictions against Dr. Bryan ("Dr. Bryan") and (2) denial of treatment of a spider bite against Dr. Bryan and Defendant Advanced Nurse Practitioner Gregory Martin ("Nurse Martin").

The State of Nevada has appeared only on behalf of Nurse Martin and not Dr. Bryan. Nurse Martin filed the present motion for summary judgment, arguing that he cannot be liable for a constitutional violation of Bailey's rights under the Eighth Amendment. (#31, at 2). Bailey

responded, asserting that the medical staff, including Nurse Martin, were indifferent to his serious medical issues and that he properly exhausted his grievances with the prison before bringing the present suit. (#43).

The Court finds that Bailey failed to properly exhaust his administrative remedies, and finds that even if he had, his argument on the merits fails because he has not provided evidence to show a genuine issue of material fact remains.[1] Thus, Martin's motion for summary judgment is granted.

II. Analysis

**A. Legal Standard**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "Where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is inappropriate for resolution on summary judgment.'" Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (quoting Direct Techs., LLC v. Elec. Arts, Inc., 836 F.3d 1059, 1067 (9th Cir. 2016)).

---

[1] In Bailey's opposition to the motion for summary judgment he makes many arguments and assertions pertaining to the claims dismissed in the screening order (#10). Because those claims have been dismissed the court disregards those arguments.

**B. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has stated that exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly." Woodford v. Ngo, 548 U.S. 81, 90 (2006).

Exhaustion serves the purpose of protecting administrative agency authority and promoting judicial efficiency. See McCarthy v. Madigan, 503 U.S. 140, 145 (1992). The exhaustion doctrine "acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Id. It promotes judicial efficiency because, given the opportunity for an agency to correct its errors, an issue may be mooted. Id. It also helps produce a useful record that can aid courts in evaluating a legal claim. See id.

The Supreme Court has been clear that exhausting these administrative remedies is imperative. See Booth v. Churner, 532 U.S. 731, 733 (2001). The language of the PLRA is mandatory and "means a court may not excuse a failure to exhaust" even when "special circumstances" exist. Ross v. Blake, 578 U.S. 632, 639 (2016). The Ninth Circuit also held that pursuant to PLRA district courts are required to dismiss actions without prejudice when prisoners fail to exhaust administrative remedies prior to filing suit. See Mckinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

Administrative Regulation ("AR") 740 governs the grievance process for NDOC inmates and sets fort the procedures inmates must follow to resolve an alleged violation of the inmate's civil rights. AR 740.03(1). This allows prisoners to file complaints "to resolve addressable inmate claims, only if the inmate can factually demonstrate a loss or harm." Id. These grievances may be filed regarding "personal injuries, and any other tort claim or civil rights claim relating to conditions of institutional life." Id. An inmate has six months to grieve an alleged violation of his civil rights. AR 740.08(4)(A). If an inmate fails to meet the deadline, then the opportunity to

1    obtain relief for the alleged conduct is forfeited. AR 740.08(8).

2        At the informal level, an inmate should file an official grievance after failing to resolve the
3    matter through other means, such as filing a "kite" which is an inmate request form. AR
4    740.08(1). If the issue raised is not grievable, the Grievance Coordinator will return the
5    grievance to the inmate with Form 3098 noting the reason. AR 740.08(9). An inmate's failure to
6    sign and date any grievance form at any level will constitute an abandonment of the claim. AR
7    740.03(6)(B). The inclusion of more than one grievance issue per form will also prohibit the
8    grievance from being accepted. AR 740.03(4)(D). If an inmate disagrees with a response, the
9    inmate must file an appeal within five days of the date the inmate received a response. AR
10   740.08(12)(A). This appeal is considered a first level grievance. AR 740.09. A first level
11   grievance that does not comply with procedural guidelines is returned to the inmate, with
12   instructions of how to fix any mistakes. AR 740.09(4). If an inmate disagrees with the response
13   to the first level grievance, the inmate must file an appeal within five days of receiving that
14   response. AR 740.09(5)(A). This appeal is considered a second level grievance. AR 740.10. This
15   is the final grievance that an inmate may file, unless the inmate is alleging sexual abuse. AR
16   740.10(1)(G).

17       Martin argues in the present motion that Bailey failed to properly exhaust his administrative
18   remedies and thus the action against Nurse Martin must be dismissed. (#31, at 7-8). Martin
19   argues that first, Bailey included more than one issue in his grievance about a spider bite because
20   he complains of concealing x-ray results *and* deprivation of medical attention for his spider bite.
21   (#31-5). Second, Bailey submitted a kite, but he failed to wait for his scheduled sick call and
22   instead filed an informal grievance less than two weeks later. Third, the institution responded to
23   his complaint, stating that the issue had been resolved because Bailey had been seen by medical,
24   informed of his negative x-ray results, and told him that additional medical needs should be
25   submitted through a kite. (#31-5). Fourth, Bailey failed to date his appeal, which resulted in an
26   abandonment of the claim. (#31-9, at 7). Fifth, Martin argues that Bailey failed to properly grieve
27   to the second level before filing his federal complaint in September of 2020. (#1-1).

28       Bailey argues that he did properly exhaust his administrative remedies regarding the spider

1  bite because he submitted an informal grievance and after not receiving a response within 45
2  days, he filed a first level grievance on May 17, 2020. Bailey admits in his response that he did
3  not date the first level grievance which led to a dismissal, but argues that it should still be
4  admissible as a proper filing because the Grievance Coordinator could assume what the date was.
5  (#41, at 7).

6      On November 12, 2019, Bailey submitted a kite alleging he was bitten by a spider and that he
7  had swelling and back pain. (#33-1). That same day, the kite was responded to indicating Bailey
8  was placed on sick call for evaluation. Id. Less than two weeks later, on November 25, 2019,
9  Bailey submitted informal grievance #2006-30-98637 complaining of both "the doctors
10 employed by the HDSP Infirmary concealing what x-ray revealed from waist down to avoid
11 providing adequate medical attention concerning my reproductive system" and that he was
12 deprived of "medical attention on a spider bite[.]" (#31-5). On May 15, 2020, Bailey received a
13 response that the grievance was resolved because his chart indicated that he was seen on April
14 20, 2020, that his x-ray results were negative, and any additional medical appointment requests
15 should be submitted via kite. Id. Bailey disagreed and then filed a first level grievance but failed
16 to date the form. Id. This was rejected for failure to date and because it was an improper way to
17 ask for medical help. Id. It states that a "[g]rievance will not be used as an inmate request form…
18 to advise staff of issues, actions or conditions that they do not like but suffered no harm or loss."
19 Id.

20     The Court agrees with Martin that Bailey unsuccessfully grieved his issues. Precedent makes
21 clear the mandatory nature of inmates traveling the proper channels of exhaustion before
22 bringing a claim to court. See Booth, 532 U.S. at 733. Bailey incorrectly complained of two
23 issues in his grievance: concealing x-ray information and failure to care for his spider bite. He
24 also failed to date the claim which results in an abandonment of the claim. Bailey has failed to
25 present sufficient evidence to refute the government's argument that he did not properly comply
26 with these procedural requirements, and therefore, because he has failed to properly exhaust the
27 administrative remedies, Martin's motion for summary judgment is granted.
28

### C. Spider Bite

The only surviving claim from the screening order against Nurse Martin is the Eighth Amendment claim for denial of treatment for a spider bite. (#10, at 16). Martin, as the moving party, has made his case that there is no genuine issue of material fact for a trial. See Celotex, 477 U.S. at 323. The burden then shifted to Bailey as the nonmoving party to rebut the government's claims with credible evidence demonstrating there is a genuine issue of material fact for a judge or jury to consider at trial. See Matushita Elec. Indus. Co., 475 U.S. at 587. Bailey cannot rest merely on the allegations in his pleading but must provide "significant probative evidence tending to support the complaint." Anderson, 477 U.S. at 249. The Court finds that Bailey has failed to satisfy his burden of presenting credible evidence demonstrating a genuine issue of material fact. Therefore, for the reasons explained below, the government's motion for summary judgment is granted.

"[A] prison administrator can be liable for deliberate indifference to a prisoner's medical needs if he 'knowingly fail[s] to respond to an inmate's requests for help.'" Peralta v. Dillard, 744 F.3d 1076, 1085-86 (9th Cir. 2014). "In the Ninth Circuit, the test for deliberate indifference consists of two parts." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "First, the plaintiff must show a 'serious medical need by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." Id. "[T]his is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id.

Martin argues that "a spider bite does not rise to the level of a serious medical need to support an eighth amendment claim." (#31, at 9). Martin argues that Bailey has failed to present any objective evidence demonstrating that the spider bite was a serious medical need– there is no "physician's diagnosis" and nothing indicating it was "so obvious that even a layperson would easily recognize the necessity of a doctor's attention." Bailey v. Feltmann, 810 F.3d 589, 594 (8th Cir. 2016). Martin also argues that Bailey has failed to show there was deliberate indifference to the spider bite because (1) Nurse Martin did not receive or respond to Bailey's

kite; (2) Bailey was seen several weeks after submitting his kite by a different practitioner but for other unrelated conditions; (3) Bailey was seen by Nurse Martin on January 27, 2020 and did not report a spider bite and Nurse Martin did not observe any indications or symptoms of a spider bite. (#31, at 11).

Bailey asserts that he had a spider bite that caused him immense pain and that Nurse Martin did not see or examine the bite. (#41, at 5). Bailey also states that he filed his inmate request form complaining of the pain from the bite, and that it took Nurse Martin 57 days to see Bailey about it. Id. at 9. Bailey states that Nurse Martin disregarded the fact that the spider bite *could* have been poisonous which *could* have been fatal, and that prison administrators failed to spray the prison units annually. Id. He also states that "ANY spider bite requires immediate medical attention" to determine whether or not it is poisonous. Id. at 22. In Bailey's response, he claims that the bite caused swelling, pain, and sleepless nights and that Nurse Martin acted "maliciously and sadistic[ly]" for failing to treat it. Id. at 23. Bailey also alleges that there were entries on January 27, 2020, in Bailey's medical file that were "scrubbed" by Nurse Martin after he discovered the medical staff at HDSP were being sued by Bailey. Id.

Bailey assertions are not backed up with any evidence. For example, he says without anything to confirm this, that the "prison units are sprayed *maybe* once a year, subjecting the Plaintiff to black widows, poisonous snakes and other flesh-eating spider bites, the [sic] warrant immediate medical attention, because of the pain and suffering complained of…." Id. at 19. However, Bailey provides nothing to persuade the Court that the prison has a responsibility to or refuses to spray for poisonous pests according to an annual schedule. Bailey also never made any official complaints to anyone that he was bitten by a dangerous or poisonous spider, he only asserts that there was a possibility the spider could have been poisonous and that it caused him pain and suffering.

The Mayo Clinic states that "[s]pider bites are usually harmless[.]" *Spider Bites*, MAYO CLINIC, Spider bites - Symptoms and causes - Mayo Clinic (last visited December 6, 2022). "Worldwide only a few species of spiders have fangs long enough to penetrate human skin and venom strong enough to hurt humans" and even with poisonous spiders, "[r]arely, a bite from a

1  widow spider or recluse spider is deadly[.]" Id. The Cleveland Clinic also states that medical
2  attention is only necessary if severe symptoms are present. *Spider Bites*, CLEVELAND CLINIC,
3  Spider Bites: Signs, Symptoms, Diagnosis, Treatment & Prevention (clevelandclinic.org) (last
4  visited Dec. 6, 2022). It is generally accepted within the medical community that spider bites are
5  typically harmless, and Bailey has not demonstrated that his bite was particularly harmful. The
6  mere possibility that the spider bite could have been more serious is not enough to establish that
7  it was in fact, a serious medical need. Bailey also fails to back up his claim that his files were
8  "scrubbed" by Nurse Martin, and without evidence that the spider bite was more serious, Bailey
9  has failed to raise a genuine issue of material fact.
10 　Bailey also fails to show that Nurse Martin showed deliberate indifference to his spider bite.
11 Nurse Martin examined Bailey in January 2020 and Bailey made no complaints about a spider
12 bite and he did not witness any signs or side effects of a spider bite, skin infection, or allergic
13 reactions. (#31-3). Bailey has also not shown that even if there was any indifference to his
14 condition, that it caused him harm. Besides asserting that it caused him pain and suffering,
15 without more specific and objective evidence, Bailey has failed to meet his burden in raising a
16 genuine issue of material fact that Martin was deliberately indifferent to a serious medical
17 condition. Ultimately, Bailey fails the Ninth Circuit deliberate indifference test for an Eighth
18 Amendment medical need violation. He does not have adequate evidence to support his
19 allegations of a serious medical need and a purposeful action or failure to respond that resulted in
20 further harm.
21 　**D.  Exhibits Under Seal**
22 　Bailey also objects to Defendant's counsel filing Exhibits C, E, G, and F under seal. (#36, at
23 2). On July 21, 2022, Defendant filed a motion to file four exhibits in support of its motion for
24 summary judgment under seal. (#32). Defendant filed that motion pursuant to LR IA 10-5(a) and
25 "the need to protect sensitive medical information." Id. at 3. The exhibits at issue contained
26 confidential medical records from Bailey's medical file. Id. On July 29, 2022, the Court granted
27 that motion and ordered the exhibits be filed under seal. (#35).
28 　Bailey filed his motion objecting to the exhibits being filed after the Court granted the

defendant's motion requesting the sealing. Bailey argues in his motion that Defendant filed his motion asking the Court to seal the documents "after the Plaintiff's medical files have been scrubbed" and that the exhibits were filed without serving them on Bailey so that he could not properly respond to the motion for summary judgment. (#36, at 2-3). Bailey also asserts that Defendant filed this motion to seal before a Court that "disfavors prison litigation" and "Afro-Americans." Id. at 3. Later in Bailey's motion, he claims that he should not have to go to the "oppressor," likely meaning the prison warden, to review the sealed documents on the limited timeframe allowed by prison regulations. Id. Finally, Bailey asserts that Defendant's counsel is violating Rule 37 for not serving the exhibits to him. Id. In Bailey's response to the motion for summary judgment, he also makes claims about Defendant's intentions behind getting the exhibits sealed. (#41). Mainly, Bailey argues that the medical documents under seal function as protection for Nurse Martin from further liability, and he implies a conspiracy between the Court and Defendant to disenfranchise Bailey. Id.

Defendant responded to Bailey's objection to the exhibits being sealed. (#38). Defendant denies that he never served Bailey with the sealed Exhibits C, E, G, and F, and attached the letter sent to Bailey informing him that the sealed exhibits that corresponded to the motion for summary judgment were available in the warden's office and that to view them, he needed to make a request to the warden. (#38-1).

The Nevada Department of Corrections Administrative Regulation ("AR") 639 states that medical records must be maintained in secure files and that "[a]n offender is prohibited from possessing any portion of their medical file on their person, in their cell, or in the yard" and also that "[o]ffenders may request to review their medical records." AR 639.02. Because prisoners are prohibited from possessing medical files in their cell, Bailey had to make a request to the warden to view them. Bailey makes two claims in his motion– that he was never served and that he does not want to view them in the warden's office. (#36, at 2, 4). It is not clear which is his main assertion, but without evidence to refute that Defendant sent him a letter informing him the exhibits were sealed and with the warden, the Court finds for Defendant. The Court notes that medical files containing Bailey's private medical information were sealed to prevent the public

from having access to them, and not as an attempt to conspire against Bailey and his rights as a prisoner and citizen. This procedure complied with the administrative regulations prohibiting prisoners from keeping medical records in their cells. Despite what Bailey argues, the sealing of documents was a procedural safe-ground for Bailey and does not interfere with his ability to respond to the government's motions, even with periodic library and warden office closures. In fact, Bailey has never asserted that he requested to view the records.

III.     Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendant Martin's Motion for Summary Judgment (#31) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Defendant Martin and against Plaintiff;

**IT IS FURTHER ORDERED** that Plaintiff's Motion Objecting to Use of Exhibits Filed Under Seal (#36) is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Extend Time to File Opposition to Motion for Summary Judgment (#37) is **GRANTED.**

Dated this 3rd day of February, 2023.

Kent J. Dawson
United States District Judge